UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALOTH DUONG,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,

                                                        /

Case No. 1:15-CV-1206

HON. ROBERT J. JONKER

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Maloth Duong seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-one years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.38, 71.) He obtained a GED, and was previously employed as a quality assurance supervisor, interpreter, and translator. (PageID.90, 101.) Plaintiff applied for benefits on June 2, 2014, alleging that he had been disabled since September 27, 2012, due to arteriosclerotic cardiovascular disease, PTSD–anxiety and cerebral ischemia, headache syndrome, a left shoulder condition, lumbar disc degeneration, left knee osteoarthritis, obstructive sleep apnea, and left leg sciatica. (PageID.145–146, 264–270.) On December 5, 2014, Plaintiff was awarded benefits, but only beginning on April 24, 2014. Plaintiff subsequently requested a hearing before an ALJ.

(PageID.182–195.) On May 21, 2015, Plaintiff appeared with his representative before ALJ William Reamon for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.64–108.) In a partially favorable decision dated July 17, 2015, the ALJ determined that Plaintiff was not disabled prior to April 24, 2014, but became disabled on that date through the date of the decision. (PageID.38–63.) On September 15, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.27–30.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Reamon determined that prior to April 24, 2014, Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (PageID.44.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) ischemic heart disease; (2) hypertension; (3) degenerative disc disease of the lumbar spine; (4) bilateral degenerative changes of the knees / right knee chondromalacia patellae without meniscal tear; (5) mild traumatic brain injury (TBI); and (6) anxiety disorder / posttraumatic stress disorder (PTSD). The ALJ also determined that beginning on April 24, 2014, Plaintiff had the additional severe impairment of loss of speech. (PageID.44–45.) At the third step, the ALJ found that prior to April 24, 2014, Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.45–46.) At the fourth step, the ALJ determined Plaintiff's RFC, and found that Plaintiff:

> could not lift over 15 pounds; could have no repetitive bending, twisting, stooping, or crawling; and unable to sit or stand for any length of time over 10 to 15 minute intervals; and can understand, remember, and carry out simple instructions with no interaction with the general public and occasional interaction with co-workers and supervisors.

(PageID.46–47.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.53.) At the fifth step, the ALJ questioned the VE

to determine whether a significant number of jobs existed in the economy that Plaintiff could have performed given his limitations prior to April 24, 2014. *See Richardson*, 735 F.2d at 964. The VE identified the following sedentary positions as those Plaintiff could perform: surveillance systems monitor (12,000 national jobs), inspector (86,800 national jobs), and packager (98,000 national jobs). (PageID.102–104.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.55.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from his onset date through April 23, 2014. The ALJ concluded, however, that beginning April 24, 2014, the severity of Plaintiff's impairments met the criteria of Listing 2.09 in the Listing of Impairments, and consequently entered a decision finding Plaintiff disabled as of that date through the date of decision. (PageID.55–56.)

## DISCUSSION

At step five in the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones*, 336 F.3d at 474. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in significant numbers in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d

at 779.  "The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).  Accordingly, in order to satisfy the burden, the ALJ consulted a VE at the hearing.  As noted above, the VE identified the positions of surveillance system monitor, inspector, and packager and positions the Plaintiff was able to perform.  Plaintiff argues, however, that the VE's testimony here cannot support the ALJ's step five determination.  The Court disagrees.

Plaintiff first argues that the VE's testimony with regard to the inspector and packager positions was inconsistent with the Dictionary of Occupational Titles (DOT) and that there is an unresolved conflict under SSR 00–4p.  (PageID.2970.)  Plaintiff's claim is not well developed, and is contained entirely in two brief footnotes, the heading of Plaintiff's argument, and a single sentence in his conclusion.  (PageID.2970–2974.)  The only legal authority he cites is a vague allusion to SSR 00-4p.  (PageID.2970.)  Issues raised in a perfunctory manner are deemed waived.  *Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012.)  Even assuming that Plaintiff did not waive this issue, however, it is meritless.

Plaintiff appears to contend that he cannot perform the work of inspector and packager as defined in the DOT because the DOT describes the work as light and medium work, which exceeds his RFC for sedentary work.  The Sixth Circuit, however, has stated that ""neither the ALJ nor the VE is required to follow the DOT." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x at 168 (citing *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003)).  In *Wright v. Massanari*, the Sixth Circuit held that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to

rely on the Dictionary's classifications." 321 F.3d at 616.  As SSR 00–4p notes:

> The DOT contains information about most, but not all, occupations . . . .  The term "occupation," as used in the DOT, refers to the collective description of [similar jobs performed in different workplaces]. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available . . . from a VE's . . . experience in job placement or career counseling.
>
> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings.  A VE . . . may be able to provide more specific information about jobs or occupations than the DOT.

SSR 00–4p, 2000 WL 1898704, at *2–3 (S.S.A. Dec. 4, 2000).  Therefore, "[a]n ALJ is not bound by the job classifications in the DOT and 'may accept testimony of a vocational expert that is different from information in the'" DOT. *Pena v. Comm'r of Soc. Sec.*, 2008 WL 3200253, *5 (N.D. Ohio Aug. 4, 2008) (quoting *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995)); *see also Beinlich*, 345 F. App'x at 168; *Dunlap v. Barnhart*, 2004 WL 784837, *14 (W.D. Tenn. Mar. 15, 2004).

Moreover, Plaintiff's representative had the opportunity to cross-examine the VE and call the ALJ's attention to any discrepancies between the VE's testimony and the DOT, and he failed to do so.  Under SSR 00–4p, the ALJ was obligated only to ask the VE whether his testimony was consistent with the DOT, and he did so.  While the VE testified that the DOT numbers and descriptions were consistent, he stated that accounting for the time Plaintiff would be off task from a sit/stand option was based off his experience.  (PageID.105.)  Consistent with SSR 00-4p's direction, the ALJ accepted this as a reasonable explanation.  (PageID.55); *see also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir.2009) (holding that the ALJ fulfilled his duties when he asked the VE whether there was any "discrepancy between your opinions and the DOT

7

standards," even if the VE did not disclose a conflict). The *Lindsley* decision clearly establishes that the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry specified by SSR 00–4p. *Id.* It was Plaintiff's representative's job to cross-examine the VE and bring out any perceived conflicts with the DOT, if any there were. *See Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. Dec.19, 2008). Here, Plaintiff's representative did question the VE, but did not on this matter. (PageID.106–107.) Plaintiff now seeks a second bite at the apple to do now what he properly should have done at the administrative hearing. The Court concludes the ALJ properly relied on these VE's testimony regarding these positions.

The gravamen of Plaintiff's argument, however, is that the ALJ could not rely on the VE's testimony that Plaintiff could perform the position of surveillance system monitor. He notes that the DOT last updated the description of the position eleven years prior to the hearing, and argues that to rely on such outdated information is in direct conflict with the Sixth Circuit's holding in *Cunningham v. Astrue*, 360 F. App'x 606 (6th Cir. 2010). (PageID.2971–2974.) He further argues that the ALJ and VE should have relied on the more recent definition contained in the Occupational Information Network (O*NET). (PageID.2973.)

O*NET is an online database that was developed by the North Carolina Department of Commerce through a grant by the United States Department of Labor. *O*Net Resource Center,* O*NET ONLINE*, http://www.onetcenter.org/overview.html (last visited Sept. 26, 2016). Its website states that it is "the nation's primary source of occupational information." *Id.* However, while the DOT appears on the list of publications from which the agency can take "administrative notice of reliable job information," the O*NET does not. *See* 20 C.F.R. § 404.1566(d)(1)-(5). The ALJ was not required to accept the occupational information contained in the "O*NET Online" or any

8

particular source. Under the regulations, an ALJ is authorized "to use a vocational expert or other specialist" and to "take administrative notice of reliable job information available from governmental and other publications." 20 C.F.R. § 404.1566(d), (e). Here, while the ALJ found that the VE's testimony was inconsistent with information contained in the DOT, he resolved the conflict by noting that the sit/stand option is not included in the DOT, and that the VE stated he based his testimony on his knowledge and experience. (PageID.55.) As noted above, an ALJ is "within his rights to rely solely on the vocational expert's testimony," even if that testimony conflicts with the DOT, because "[t]he social security regulations do not require the [Commissioner] or the expert to rely on classifications in the Dictionary of Occupational Titles." *Conn*, 51 F.3d at 610; *see also* SSR 00–4p, 2000 WL 1898704 at *2 (providing that "[o]ccupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT," but cautioning that "[n]either the DOT nor the VE . . . evidence automatically 'trumps' the other when there is a conflict").

Plaintiff's reliance on *Cunningham* is misplaced. The Sixth Circuit's unpublished decision "did not hold that the DOT is an unreliable or out-of-date source. Rather, the court acknowledged that pursuant to the regulations the DOT is a publication of which the ALJ may take notice." *Earls v. Comm'r of Soc. Sec.*, No. 1:09 CV 01465, 2011 WL 3652435, at *7 (N.D. Ohio Aug. 19, 2011) (citing *Cunningham*, 360 F. App'x at 615). In *Cunningham*, Mr. Cunningham died while his lawsuit challenging the Commissioner's decision denying his application for DIB benefits was pending. The district court affirmed the Commissioner's decision. A divided appellate panel found that the administrative record was "insufficient to address Cunningham's claim" and remanded the matter for further administrative proceedings. 360 F. App'x at 615. Judge Ryan

9

dissented, noting that the majority had departed from the proper scope of judicial review in order to achieve this result. *Id.* at 616 (Ryan J. dissenting). No subsequent Sixth Circuit decision has cited the unpublished *Cunningham* decision or questioned the "reliability" of VE testimony in a similar fashion. *See Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 851–53 (6th Cir. 2010); *see also Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 200–01 (6th Cir. 2010).

But even assuming that all the security surveillance monitor jobs were eliminated, the remaining 178,000 national inspector and packager positions identified by the VE, and which the Court has found the ALJ did not err in providing, would constitute substantial evidence supporting the Commissioner's decision. *See Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir.1993) (1,400 is a significant number and collecting cases where as few as 174 positions were found to be a significant number); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988) (1,350 is a significant number); *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 375 (6th Cir. 2006) (870 jobs is a significant number).

For all these reasons, Plaintiff's claim of error is rejected.

## CONCLUSION

For the reasons discussed, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.

Dated: September 29, 2016          /s/ Robert J. Jonker
                                   ROBERT J. JONKER
                                   CHIEF UNITED STATES DISTRICT JUDGE